BELLEVUE PROPERTIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND GERTRUDE S. LOVELAND, PLAINTIFFS-APPELLANTS, v. PENNSYLVANIA-READING SEASHORE LINES, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Submitted February 4, 1947—Decided June 27, 1947.

For the appellants, *James M. Davis, Jr.*

For the respondent, *Lloyd, Horn & Perskie* (*Herbert Horn* and *DeVoe Tomlinson*, of counsel).

The opinion of the court was delivered by

McGEEHAN, J. This appeal is from a judgment of nonsuit entered in the Supreme Court in an action tried in the Atlantic Circuit before Circuit Court Judge Burling and a jury. The suit was brought by the plaintiffs against the defendant railroad company for damages resulting to real estate owned by plaintiffs caused by fire, which they contended had been caused by and spread as a result of the negligence of defendant.

The defendant operated a railroad between Atlantic City and Camden which ran through Hammonton in a north-westerly direction. Sometime after two P. M. Sunday, April 20th, 1941, a fire was discovered burning between Egg Harbor Road and the railroad tracks within the Town of Hammonton. The defendant admitted that its right of way was 60 feet in width, although plaintiffs' proof was that such right of way was 50 feet in width in general. Egg Harbor Road runs parallel to the railroad tracks and 665 feet distant from the railroad right of way in a northeasterly direction. The

lands between the railroad right of way and Egg Harbor
Road were in private ownership. On these lands in private
ownership an eight-foot strip (also referred to as the "fire
line" or "ditch") had been cleared and plowed parallel to
the railroad right of way at a distance of 150 feet north-
easterly, and this strip separated the denser growth lying
between this strip and Egg Harbor Road from the 150-foot
clearing running to the railroad right of way. The W. P. A.
in 1938 had grubbed, disced and plowed this fire ditch and
cleared everything between this ditch and the railroad tracks.
The land between the plowed strip and Egg Harbor Road
rose in the form of a hill and then descended, forming what
is referred to as the "gravel pit" running up to the road.
The wind was blowing from south to southwest at a velocity
of twenty miles per hour. The fire traveled across Egg Har-
bor Road and Moss Mill Road and unto lands of the plaintiffs,
where it damaged timber. When first discovered, the fire was
already "quite a fire" and was "burning all along in back of
the gravel pit." Of the number of witnesses who testified
they saw the fire, only one, Sooy, a deputy fire warden, testi-
fied to any observation, on the day of the fire, of the land
lying between the railroad right of way and the top of the
hill in the rear of the gravel pit. Sooy approached the fire
from the railroad side, went to the fire line or ditch and saw
the fire burning from the northeasterly side of the ditch to
the gravel pit, but saw no fire burning on the railroad side
of the ditch; the fire he saw burning on the northeasterly
side of the ditch was described by him as follows: "What I
saw there burning was from the edge of this other fire, from
the main fire."

No one saw the fire start. It was shown by records of
the railroad that three of defendant's trains drawn by steam
engine had passed over the tracks south of the fire during
the hour previous to the discovery of the fire, but no one
saw any train as it passed. There was no testimony as to
whether or not any person was at or near the place of the
fire immediately before or at the time the fire started, al-
though an unsuccessful attempt was made to furnish such
testimony by the witness McGrath. Sooy, the deputy fire

warden, testified that on the following day he went to the railroad, the fire line and the place of the fire, to see if he could find "the origin of the fire, how it started," but found nothing which indicated to him the cause of the fire. Samuel Loveland, Jr., a son of plaintiff Loveland, and a Peter Ranere visited the burned area several days after the fire and testified that there was what "appeared" to them to be a freshly burned area between the fire line and the tracks extending not over 10 feet from the fire line toward the railroad right of way, which placed it, at the nearest, 140 feet northeast of the right of way; they also testified that there were leaves and dried grass on the land lying between the railroad right of way and the fire line.

The applicable statutory provisions are contained in *R. S.* 48:12–85 (before amendment by *Pamph. L.* 1942, *ch.* 238) and *R. S.* 48:12–86, which provided:

"48:12–85. Spark Arresters on engines; penalty.—Every Company or person operating or using any railroad shall take and use all practicable means to prevent the communication of fire from any engine used therein to the property of any owner or occupant of land adjacent or near to the railroad and shall provide the engine with a screen or cover to arrest or prevent, as much as practicable, the escape of fire.

"Any company or person refusing or neglecting to make such provision shall forfeit for every such refusal or neglect one hundred dollars to be recovered with cost by any person who may sue for the same in any court having cognizance thereof. One-half of said sum shall go to the person suing and one-half to the state for the public school fund.

"48:12–86. Liability for damage by fire from sparks.— When injury is done to property by fire communicated from an engine of any company or person in violation of section 48:12–85 of this title such company or person shall be liable in damages to the person injured.

"In every action for an injury done to the property of any person by fire communicated from an engine in violation of said section 48:12–85, proof that the injury was communicated from an engine shall be *prima facie* evidence of such violation, subject, nevertheless, to be rebutted by evidence of

the taking and using of all practicable means to prevent such communication of fire as by said section required."

The complaint charged negligence in that (1) said railroad train was allowed to set on fire the land adjacent to the lands of the defendant railroad company and to be communicated therefrom to the land of plaintiff, (2) the railroad company did not keep its right of way reasonably clear of brush and other inflammable material along the property of the said railroad company and permitted the communication of that fire to the property and real estate of the plaintiff herein, (3) the said railroad company did not provide its engine with a screen and cover on the smoke stack so as to arrest and prevent the escape of fire, and (4) that the said screen or cover so provided by the said defendant was in bad need of repair and did not tend reasonably to prevent the escape of fire from the said engine. There was no testimony as to allegations (3) and (4) and the case was tried on allegations (1) and (2). There was no testimony that any fire occurred on the 60-foot railroad right of way or that any combustible materials were on said right of way.

Appellants' first point is that the court erred in determining that there was not sufficient evidence that a fire had been communicated from the defendant's locomotive to warrant the submission of the case to the jury. *Woodford Land Co.* v. *Delaware, Lackawanna and Western Railroad Co.*, 97 *N. J. L.* 510; *Wiley* v. *West Jersey Railroad Co.*, 44 *Id.* 247; *Minard* v. *West Jersey and Seashore Railroad Co.*, 74 *Id.* 39, and *Manasquan Fish Co.* v. *Pennsylvania Railroad Co.*, 4 *N. J. Mis. R.* 621, are cited by appellants, but even with the broadest interpretation, none support appellants' argument that under the evidence in this case a jury question was presented.

Appellants' second point is directed to the court's refusal to permit answers to certain questions which plaintiff claimed would tend to establish a contractual obligation on the part of the defendant to maintain this fire line on this privately owned property for the benefit of all persons whose property might be affected by railroad fires. Aside from the fact that no contractual obligation was pleaded and the further fact

that there was no proof that any fire occurred, on the day in question, on this 150-foot strip of private property lying between the so-called fire line and the railroad right of way, plaintiffs admitted that the owner, if present, would testify that she has no recollection as to whether or not she executed any instrument consenting to the use of her land, and had no recollection as to whether or not the work was performed until after the date of the fire. We find no merit in this point.

The judgment under appeal is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, EASTWOOD, WELLS, FREUND, McGEEHAN, McLEAN, JJ. 11.

*For reversal*—WACHENFELD, J. 1.